FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

97 NOV -4 AM 10: 12

U.S. DISTRICT COURT
N.D. OF ALABAMA

WILLIAM D. HAYNES and )
JIMMY JORDAN, )
 )
    Plaintiffs, )
 )
v. ) CV-97-PT-0099-E
 )
ALABAMA INSTITUTE FOR DEAF )
AND BLIND; and RAY MILLER, )
 )
    Defendants. )

ENTERED

NOV 4 1997

## Memorandum Opinion

    This cause comes on to be heard on the motion for summary judgment filed by the defendants, Alabama Institute for Deaf and Blind and Ray Miller ("Miller"), on September 22, 1997 and the motions of the plaintiffs, Jimmy Jordan ("Jordan") and William D. Haynes ("Haynes"), for summary judgment filed on September 22, 1997. The plaintiffs raise a mélange of claims: (1) section 1981 claims for racial discrimination;[1] (2) section 1983 claims for violations of the First and Fourteenth amendments to the Constitution;

---

[1] These claims are never addressed in the parties' briefs. Racial harassment is proscribed under § 1981. Vance v. Southern Bell Tel. And Tel. Co., 863 F.2d 1503 (11th Cir. 1989). In any event, the claims are duplicative of the Title VII claims against AIDB and Miller had no contract with the plaintiffs.

(3) Title VII claims for race discrimination and harassment, gender discrimination, sexual harassment and retaliation; and (4) Americans with Disabilities Act claims for both disability discrimination and disability harassment.[2] Jordan raises an Alabama state law claim for assault and battery.[3]

On a motion for summary judgment, the court must assess the proof to ascertain whether there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only if this court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the grounds for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes prove the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file

---

[2] The plaintiffs had initially raised Age Discrimination in Employment claims, but request dismissal of those claims in their brief in support of their motions for summary judgment. The ADEA claims will be DISMISSED, with prejudice.

[3] In a recorded telephone conference on November 3, 1997, the plaintiffs acknowledged that their claims are limited to the following:
         Haynes
Against AIDB: Hostile environment and retaliation under Title VII and also injunctive relief;
Against Ray Miller: Retaliation under § 1983.
         Jordan
The same claims as made by Haynes plus an assault and battery claim against Ray Miller.

Apparently, the plaintiffs' attorney mistakenly forgot to include the ADA among the statutes on which their claims were based. The court will assume that the ADA claims remain unless the plaintiffs' attorney notifies this court and opposing counsel to the contrary on or before November 6, 1997. The court has so notified the parties on November 3, 1997.

designate specific facts showing the presence of a genuine issue for trial. Celotex, 477 U.S. at 324. The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . " in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In resolving whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). Considering the above, this court must examine the evidence to determine the existence of genuine issues of material fact as to the various claims.

Facts[4]

The plaintiff's claims arise out of the alleged behavior of Miller toward employees at the Alabama Industries for the Blind ("AIB"), a business operated by the Alabama Institute for the Deaf and Blind. Until October 1, 1995, Miller served as the general manager of the AIB. As general manager, Miller was responsible for overall operations of the AIB and reported to the vice president of the AIB. From October 1, 1995 until he retired in late 1996, Miller was the executive director of AIB, responsible to the vice president of business affairs.

Purportedly, while acting as general manager and as executive director of AIB, Miller regularly berated employees of AIB for reasons of race, gender and disability. Most of the incidents of which the plaintiffs complain were directed at other individuals. According to the plaintiffs, Miller slapped the buttocks of one female employee, Ms.

---

[4] In their recitation of the facts and in their briefs, the defendants treat the plaintiffs' claims as centering around the denial of promotions and removal of duties of the plaintiffs. In their brief, the plaintiffs eschew such claims, instead basing their arguments on a pattern of abuse sustained while Miller was the General Manager and Executive Director of the Alabama Institute for the Blind. To the degree that the defendants' arguments are maintained against alleged promotion denials and duty reassignments, those arguments are inapposite and will remain unaddressed. Any possible claims that the plaintiffs may have brought on such grounds will be DISMISSED.

Annette Smith, and ran his hand up the dress of another employee, Ms. Annie Mae Achison. He purportedly hit a black female employee, Ms. Louise Swain, with a money clip and told her that if she did not return the clip, she would be "one dead black nigger woman." Deposition of Louise Swain at 14. Another black female, Ms. Annie Callines overhead Miller stating that the Birmingham plant looked "just like a nigger's house." The plaintiffs aver that Miller thumped the blind employees of AIB on the head, pulled at their ears and hair, and occasionally rubbed his hands in their faces or slapped them.

Plaintiff Jordan is legally blind. In accordance with his alleged habit of physically abusing AIB's visually impaired employees, Miller slapped Jordan. Miller purportedly called Jordan a "blind bastard" in March, 1996 and told him, on May 19, 1996, to get his "blind ass" out of the way. On May 1, 1996, Jordan lodged a complaint with the Director of Finance for AIB, Ken Thompson ("Thompson"). On May 6 and 7, 1996, in response to the harassment complaint lodged against him, Miller allegedly appeared at Jordan's house and began to ring the doorbell and knock at the door persistently. When Miller was not aggressively attempting to enter Jordan's home, he was continually phoning for Jordan.

Plaintiff Haynes apparently brings his action because of verbal abuse that he received when he complained to Miller about the manner in which he treated the employees of AIB. According to Haynes, Miller would yell at him, threaten to fire him (although he had no authority to do so) and demean him in front of AIB employees. Haynes claims that, as a result of the abuse he received from Miller, he had to leave work for eleven months due to emotional stress inflicted by Miller.

## Contentions & Analysis

Before delving into the arguments of the parties, the court will address aspects of

the plaintiffs' claims which are jurisdictionally prohibited.[5] First, the plaintiffs cannot state § 1983 claims against the Alabama Institute for the Deaf and Blind ("AIDB"). The AIDB is "the official state agency to conduct the state educational and training programs for the deaf, the hearing impaired, the blind and the visually handicapped. . ." Because sovereign immunity bars any § 1983 suit against a state agency and because the AIDB is not a "person" for purposes of § 1983, the plaintiffs' § 1983 claims against the AIDB cannot be maintained.

A state or arm of the state is entitled to sovereign immunity from suit in all but a few circumstances. The Eleventh Amendment prevents a federal court from entertaining a suit brought against a state based on diversity of citizenship and, usually, a suit against a state based on federal question jurisdiction. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 99-100 (1984); Hans v. Louisiana, 134 U.S. 1, 11 (1890) (stating that the Eleventh Amendment "did not in terms prohibit suits by individuals against the states, but declared that the constitution should not be construed to import any power to authorize the bringing of such suits."). Sovereign immunity not only protects a state from suit brought against it as a named party, but also protects any state agency or arm of the state from suit as a named party, "when 'the state is the real, substantial party in interest.'" Pennhurst, 465 U.S. at 101 (quoting Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945)). However, the Eleventh Amendment sovereign immunity does not extend to counties, to municipal corporations, or to other political subdivisions of the state. Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977). In the present case, the AIDB has been designated as a state agency with the authority to train and educate the visually disabled and the hearing impaired. As an arm of the state, no suit can be brought against the AIDB in federal court.

Further, "an entity with Eleventh Amendment immunity is not a "person" within the meaning of § 1983." Howlett v. Rose, 496 U.S. 356, 365 (1990). Therefore, a state

---

[5] The court can always raise jurisdictional issues on its own initiative. Where a federal statute does not permit suit against a party, the court can have no jurisdiction over that party for claims brought under that statute.

agency such as the AIDB is not a "person" liable for constitutional violations under § 1983. See Will v. Michigan Department of State Police, 491 U.S. 58, 66-67 (1989). All of the plaintiffs' claims against the AIDB pursuant to § 1983 will therefore be DISMISSED.

The plaintiffs' claims against Miller under Title VII and the ADA cannot be maintained. Title VII limits liability for discrimination to "employers". 42 U.S.C. § 2000e-2(a). Individual supervisors cannot be held liable under the act. Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991). Nor does the Americans with Disabilities Act allow for individual liability. Mason v. Stallings, 82 F.3d 1107, 1109 (11th Cir. 1996). The plaintiffs' claims against Miller under these statutes will be DISMISSED.

The court will address the claims of Haynes and Jordan separately.

A. HAYNES' CLAIMS.

Haynes first argues that he was subjected to a hostile work environment because of Miller's alleged mistreatment of the blind, female and minority workers at the plant. Although the plaintiff is a white male who has no disability, he argues that he is entitled to protection from a hostile work environment generated by Miller against those protected by Title VII and the ADA.[6] The defendant contends that an individual not subject to discrimination cannot complain of a hostile work environment under Title VII or the ADA. In EEOC v. Mississippi College, 626 F.2d 477, 481-83 (5th Cir. 1980), the Fifth Circuit Court of Appeals addressed this contention and determined that a white employee who endured a hostile work environment based upon discrimination against black employees was an "aggrieved party" contemplated by Title VII:

> Section 703 of Title VII proscribes those employment practices utilized by an employer that discriminate against any individual "because of such individual's

---

[6] The court notes that Miller has not claimed qualified immunity from suit under § 1983. Therefore, discussion of his liability will not be addressed through the shield of such immunity, but simply on the basis of whether he can be held liable for race and gender discrimination in violation of Equal Protection Clause in a suit brought by someone not himself subjected to such discrimination. The court is of the opinion that the Equal Protection Clause provides a right only for those who are denied the equal protection of the laws, not those who, though not denied such protection, are offended or upset by the denial of such protection to others or who are allegedly retaliated against with reference thereto. For this reason, the Haynes' claims against Miller in his individual capacity will be DISMISSED.

race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Section 706(b) of Title VII permits "a person claiming to be aggrieved, or . . . a member of the Commission" to file with the EEOC a charge alleging an unlawful employment practice under Title VII. See id. § 2000e-5(b).

In Rogers v. EEOC, 454 F.2d 234 (5th Cir. 1971), cert. denied, 406 U.S. 957 [] (1972), Judge Goldberg, without the concurrence of either of the two other panel members, concluded that an employee could charge her employer under § 703 with discrimination that, although not directed towards her, had the effect of creating a "working environment heavily charged with discrimination." Judge Goldberg observed that § 703(a)(1) of Title VII prohibits discrimination with respect with "compensation, terms, conditions or privileges of employment" and reasoned that Congress intended to encompass within Title VII subtle discriminatory practices that, while not directed toward the charging employee, affected the employee by creating a working environment "polluted" with discrimination. Id. at 237-39.

The [employer] relies on Stroud v. Delta Air Lines, Inc., 544 F.2d 892 (5th Cir.), cert. denied, 434 U.S. 844 [] (1977). In Stroud, a panel of this court, after noting in dictum that Delta Air Line's policy of hiring only female flight attendants violated § 703, stated that the "plaintiff (a female former stewardess) is not a person who may assert the rights of prospective male flight attendants who would complain of this illegality." Id. at 893. We interpret Stroud to hold that a Title VII plaintiff may assert only his own right to be free from discrimination that has an effect upon him and may not assert the rights of others to be free from discrimination.

Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205 [] (1972), will not permit the language in Stroud to bar every charge of discriminatory employment practices directed against a group of which the charging party is not a member. In Trafficante, the Supreme Court construed the meaning of the term "person aggrieved" contained in § 810(a) of the Fair Housing Act, 42 U.S.C. § 3610(a). The Court reasoned that by defining "aggrieved person" in § 810(a) to include "(a)ny person who claims to have been injured by a discriminatory housing practice," Congress demonstrated an intent to confer standing to the fullest extent permitted by Article III of the United States Constitution. Because the black and white tenants of an apartment complex alleged to have discriminated against nonwhites met the requirement of Sierra Club v. Morton, 405 U.S. 727 [] (1972), by alleging injury in fact in the form of "the loss of important benefits from interracial associations," the Court found that they had standing to challenge the alleged discrimination against nonwhites by filing complaints under § 810 of the Fair Housing Act. 409 U.S. at 210 [].

We agree with other circuits that have held that the strong similarities between the language, design, and purposes of Title VII and the Fair Housing Act require that the phrase "a person claiming to be aggrieved" in § 706 of Title VII must be construed in the same manner that Trafficante construed the term "aggrieved person" in § 810 of the Fair Housing Act. See, EEOC v. Bailey Co., 563 F.2d 439, 450-54 (6th Cir. 1977), cert. denied, 435 U.S. 915 [] (1978); Waters v. Heublein, 547 F.2d 466, 469-70 (9th Cir. 1976), cert. denied, 433 U.S. 915 [] (1977).

> We conclude that s 706 of Title VII permits [a plaintiff] to file a charge asserting that [an employer] discriminates against blacks on the basis of race in recruitment and hiring. Our decision today does not allow [a plaintiff] to assert the rights of others. We hold no more than that, provided she meets the standing requirements imposed by Article III, [the plaintiff] may charge a violation of her own personal right to work in an environment unaffected by racial discrimination.

The court can find no case in the Eleventh Circuit with a contrary holding. Therefore, Haynes is permitted to assert a claim that he suffered a hostile work environment as a result of discrimination practiced upon others by Miller. Section 107(a) of the ADA states that "[t]he powers, remedies, and procedures set forth in section[] . . . 2000e-5 [of Title 42] . . . shall be the powers, remedies, and procedures this subchapter provides to . . . <u>any person alleging</u> discrimination on the basis of disability in violation of any provision of this chapter. . . ." 42 U.S.C. § 12117(a). Section 107(a) states that any person "<u>alleging</u>" discrimination because of disability can bring a claim if permitted by § 2000e-5 of Title VII. The term "alleging" has a broader scope than possible alternative terms, such as "subjected to" or "enduring." The term "alleging" extends to anyone who claims that discrimination has occurred, not just those who have been directly subjected to it. Because § 107(a) allows the same remedies as § 2000e-5 of Title VII, on which the Fifth Circuit Court of Appeals relied in permitting hostile environment claims by those against whom discrimination was not directed, hostile environment suits by those individuals required to endure discrimination conducted against others may be sustained.

Because the remedies permitted for various forms of discrimination against disabled individuals in the "terms, conditions and privileges of employment" are the same as those available to those who claim discrimination on the basis of race or gender under Title VII, the plaintiff is permitted to present at claim of disability harassment under the ADA. <u>See</u> 42 U.S.C. §§ 12112(a) & 112117(a).

> "Hostile environment sexual harassment occurs when an employer's conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment.' " <u>Id.</u> at 1315 (<u>quoting</u> <u>Vinson</u>, 477 U.S. at 65 []). Title VII is violated "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " <u>Harris v. Forklift</u>

>Sys., Inc., 510 U.S. 17, 21 [] (1993) (quoting Vinson, 477 U.S. at 65, 67 []). The harassing conduct must create both an objectively hostile or abusive environment—one "that a reasonable person would find hostile or abusive"—and a subjectively hostile or abusive environment—one that "the victim . . . subjectively perceive[s] . . . to be abusive." Id. at 21-22 [].

Fleming v. Boeing Company, 120 F.3d 242, 245 (11th Cir. 1997). The averments of the plaintiffs support the existence of an objectively hostile work environment, with Miller regularly slapping, poking, prodding, insulting and patting the employees of AIB because of those employees' gender, race or disability. In addition, Haynes has shown that the environment was subjectively hostile as well; enough so to require him to allegedly take an eleven month leave of absence from work due to the emotional stress. In addition, the character and pervasiveness of the alleged discrimination could arguably have placed those who oversaw Miller on notice of his discriminatory treatment of the employees. See Allen v. Tyson Foods, Inc., 121 F.3d 642, 647 (11th Cir. 1997).

Haynes also presents a retaliation charge against AIDB. Haynes' retaliation charge is grounded in the alleged responses of Miller to comments by the plaintiff concerning Miller's treatment of black, female and blind employees. According to Haynes, Miller would yell at him and humiliate him before his employees.

>To establish a prima facie case of retaliation, the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events. EEOC v. Reichhold Chem., Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993); Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1524 (11th Cir. 1991); Tipton, 872 F.2d at 1494. As we explained in Reichhold Chem., we interpret "the causal link requirement broadly; a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." 988 F.2d at 1571-72 (citing Simmons v. Camden County Bd. of Educ., 757 F.2d 1187, 1189 (11th Cir.), cert. denied, 474 U.S. 981 [] (1985)). Once the prima facie case is established, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. As with a Title VII discrimination claim, the employer's burden is "exceedingly light." Tipton, 872 F.2d at 1495 (internal quotation omitted). The plaintiff must then demonstrate that the employer's proffered explanations are a pretext for retaliation; "the burden of production shifts, but the burden of persuasion remains with the plaintiff." Reichhold Chem., 988 F.2d at 1572.

Meeks v. Computer Associates, International, 15 F.3d 1013, 1021 (11th Cir. 1994). The

court will assume that the plaintiff has engaged in statutorily protected expression and that the expression caused Miller to berate the plaintiff. Nonetheless, the court finds that the abusive treatment of the Haynes does not rise to the level of an "adverse employment action." Although not entirely ruling out the argument that harassment was an "adverse employment action," in Wu v. Thomas, 996 F.2d 271, 273-74 (11th Cir. 1993), the Eleventh Circuit Court of Appeals, voiced scepticism of the claim when addressing the qualified immunity of an officer charged with discriminatory retaliation:

> Our cases also clearly established that no employer could fire, demote, refuse to hire, or otherwise tangibly injure an employee for pursuing a Title VII action. See, e.g., Whatley v. Metropolitan Atlanta Rapid Transit Auth., 632 F.2d 1325 (5th Cir. 1980) (retaliatory discharge); Bickel v. Burkhart, 632 F.2d 1251 (5th Cir. 1980) (retaliatory refusal to promote); East v. Romine, Inc., 518 F.2d 332 (5th Cir. 1975) (retaliatory refusal to hire), overruled on other grounds, Burdine v. Texas Dep't of Community Affairs, 647 F.2d 513 (5th Cir.1981)
>
> But plaintiffs do not cite and we cannot find any case that clearly established that retaliatory harassment—as opposed to sexual or racial harassment—could violate Title VII where the employer caused the employee no tangible harm, such as loss of salary, benefits, or position. The statute itself says that an employer cannot "discriminate" against a protected employee. That all hostile acts are wrongful is not plain from this language. Although we have interpreted Title VII to mean that an employer cannot retaliate by taking an "adverse employment action" against an employee, see, e.g., Whatley, 632 F.2d at 1328, we have never defined what this general phrase means.

The court can find no other case addressing this issue. Haynes contends that Meeks supports its claim that harassment can be an adverse employment action. Meeks, however, did not consider the abusive treatment that the plaintiff received to be an adverse employment action outside of the context of a constructive discharge claim. Meeks v. Computer Associates, International, 15 F.3d at 1021-22. Haynes cannot complain that he was constructively discharged. In fact, Haynes remains in the position he occupied for over twenty years, while Miller, the alleged villain in this case, has retired.[7]

---

[7] The court also finds that because he has suffered no adverse employment action from Miller, his First Amendment claim brought against Miller through § 1983 will be DISMISSED. To the extent that Haynes has a claim for harassment, his claim that he was retaliated against by further harassment is enveloped by his general claim of harassment.

B. JORDAN'S CLAIMS.

To the degree that Jordan's harassment claims mirror those of the Haynes, he states a case for racial, sexual and disability harassment. In addition, Jordan states a claim for disability harassment as its direct victim. He was purportedly slapped by Miller, who allegedly slapped, poked and prodded blind employees on a regular basis, in a workplace allegedly permeated by discriminatory conduct. Miller also derided Jordan by referring to him as a "blind bastard" and using similar derogatory comments. After Jordan allegedly reported Miller's behavior to Miller's superior, Miller allegedly took it upon himself to hammer at the doors of the plaintiff and phone the plaintiff incessantly for almost two days.

Jordan's claim against Miller personally under § 1983, however, fails. Blind persons do not "enjoy" classification as a suspect or even quasi-suspect class. See Spragens v. Shalala, 36 F.3d 947, 950 (10th Cir. 1994) ("In our view, a classification applying to blind persons is not suspect, or even quasi-suspect, and we therefore apply the "rational basis" standard, rather than some more strict one, to the instant case."). See also Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 442 (1985) ("[W]e conclude for several reasons that the Court of Appeals erred in holding mental retardation a quasi-suspect classification calling for a more exacting standard of judicial review than is normally accorded economic and social legislation.") As a result, the visually impaired receive no particular protection from the effects of alleged discrimination based upon their disability. Therefore, Jordan has no § 1983 claim against Miller for disability discrimination.

Unlike Haynes, Jordan states a claim against AIDB for retaliation. The plaintiff confronted Miller's superior, Thompson, about alleged harassment of him. After reporting the harassment, Miller apparently increased his abusive behavior by threatening, cajoling and intimidating Jordan not only at work but also at home. As a consequence, Jordan apparently bought five extra years towards his retirement fund and took an early retirement. The facts are sufficient to support an inference that the defendant constructively discharged the plaintiff, an adverse employment action contemplated by the ADA.

The defendant presents no argument or evidence to contradict the Jordans's assertions that he was assaulted by Miller. Therefore, Jordans's state law assault and battery claims will proceed.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment will be GRANTED in part and DENIED in part. The plaintiffs' motions for summary judgment will be DENIED. The only manner in which the factual disputes in this case can be resolved is through trial.

This ___ day of November 1997.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE